# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE LUIS HERNANDEZ,

Plaintiff,

v.

CONLEY, *et al.*,

Defendants.

Case No. 1:26-cv-05906-JLT-BAM (PC)

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE

(ECF No. 8)

**FOURTEEN (14) DAY DEADLINE**

## I. Background

Plaintiff Jose Luis Hernandez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On August 5, 2026, the Court screened Plaintiff's complaint and found that it failed to comply with Federal Rule of Civil Procedure 8 and failed to state a cognizable claim for relief. (ECF No. 8.) The Court issued an order directing Plaintiff to file an amended complaint or notice of voluntary dismissal within 30 days. (*Id.*) The Court expressly warned Plaintiff that failure to comply with the Court's order would result in a recommendation for dismissal, with prejudice, for failure to obey a court order and for failure to state a claim. (*Id.*) Plaintiff failed to file an amended complaint or otherwise communicate with the Court, and the time in which to do so has expired.

## II. Failure to State a Claim

### A. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B. Plaintiff's Allegations

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Prisoner Guard Conley, (2) Prison Guard F. Acosta, (3) Warden Raul Morales, (4) Secretary of C.D.C.R. Jeff Macomber, and (5) John Does 1-25. In the body of the complaint, Plaintiff lists additional defendants: (1) I. Salcedo, correctional Lieutenant, (2) Does 1-100 are employees who are responsible the hiring, supervision and training of correctional officers, and (3) S. Scaife, correctional lieutenant.

In claim 1, Plaintiff alleges failure to protect Plaintiff from "unleashing an actively belligerent knife-wielding prisoner upon Plaintiff."

Defendant Jeff Macomber and Raul Morales are responsible for the operation of the CDCR and CSATF, respectively, and for the welfare of all incarcerated persons. Defendant Conley, Jr. is a correctional officer, who was the lower level control booth prison guard. Defendant F. Acosta is a correctional sergeant. Defendants John Does 1-25 are employees assigned to SATF facility. Each individual is sued in his individual and official capacities.

On Thursday, November 6, 2020,[1] at 11:42 hours, Plaintiff was housed in module C3-2-219L. Defendant Conley, Jr., John Does 1-25 (officers, agents, assistants or employees working under their supervision) released Plaintiff from his assigned cell to conduct his assigned job duty in the Module.

At about 10:00 a.m., both F. Acosta and Conley, Jr, both eye witnessed prisoner Bell making terroristic threats against people stating that he wanted to "kill someone" if his cell door was opened again. Despite the threat, Defendant F. Acosta, and Conley Jr. failed to intervene by contacting mental health officials, failed to search Bell for weapons, and failed to secure his cell door.

Bell continued to yell and make racially motivated death threats against "Mexicans." Prison guard "Pena" warned Conley Jr. Defendant Conley Jr. was the only defendant working in the control booth. At 11:42 a.m. on November 6, 2025, Conley, Jr. intentionally opened prisoner Bell's cell door exposing Plaintiff to Bell's wrath.

After Conley opened the door, Bell exited the cell and viciously, maliciously, and brutally stabbed and battered Plaintiff in the head and torso, causing Plaintiff extreme pain and mental anguish and humiliation. Plaintiff was the victim of an unprovoked attack by Bell. Defendant F. Acosta, Conley, and John Does 1-25 knowingly placed Plaintiff in physical proximity with an inmate with a history of violence and had actively been making threats which constituted foreseeable damage. Bell was targeting Hispanics, and Plaintiff is Hispanic.

---

[1] This date of November 6, 2020 appears to be a typographical error. Plaintiff's other allegations in the complaint refer to the incident on November 6, 202<u>5</u>.

During the attack, Defendant Conley failed to adequately respond by being slow to intervene and failed to utilize appropriate crowd control measures such as flash grenades or smoke bombs to stop the attack.

Before the attack, Bell had made credible threats to assault Plaintiff or other inmates of his race. Defendants Conley, F. Acosta, and John Does 1-25 were made aware of these threats through direct observation, report, staff briefings, and verbal communications. Conley had been specifically instructed by prison Guard Pena-Godoy and institutional policy not to open the door to Bell's cell and inmates who pose threats to others. Despite this knowledge, Conley opened Bell's cell door without authorization or in conscious disregard of the known danger. As a result, Plaintiff was injured. Defendants F. Acosta, Conley, and John Does 1-25 had sufficient time and opportunity to avoid the assault by keeping the cell secure and searching for weapons, but deliberately did not do so.

Defendant Raul Morales, John Does 1-15, Conley, I. Salcedo, F. Acosta, and the Department of Corrections and their officers, agents, employees, failed to provide adequate security for Plaintiff by placing Plaintiff in the same housing unit with another prisoner while only one guard was on duty in that building when they know or in ordinary care should have known, that Plaintiff was susceptible to being attacked as a vulnerable and disabled prisoner. The attack was highly foreseeable and the number of guards provided was insufficient to prevent such attacks or to rescue Plaintiff. It was foreseeable that Plaintiff would be attacked in that the number of guards provided was insufficient to prevent such an attack or to rescue inmates should such attacks occur.

Defendants failed to objectively investigate Plaintiff's complaint against the defendants and falsified the grievance response to avoid liability for their actions endorsed by Defendant N. Scaife.

Plaintiff alleges Defendant Jeff Macomber, as secretary of California Department of Corrections, was responsible for establishing and implementing policies, practices, and procedures designed to assure the Plaintiff's personal safety was protected. However, these policies, practices, and procedures were not designed to ensure the Plaintiff received adequate

personal protection. Therefore, Defendant Macomber adopted policies, practices, and procedures which he knew or reasonable should have known was ineffective in delivering personal safety.

Plaintiff alleges that prior filing this complaint, on April 20, 2026, Plaintiff filed a claim against the defendants. The Department of General services refused to respond within the proper time limit and ignored Plaintiff's claims.

In claim 2, Plaintiff alleges negligent hiring, training, and supervision. Plaintiff alleges that he was harmed by Conley, F. Acosta, and John Does 1-25 and the employer California Department of Corrections 1-100 is responsible for the harm because John Does 1-100 negligently hired, trained, and supervised Conley, F. Acosta, and John Does 1-25. Does 1-100 hired Conley, F. Acosta, and John Does 1-25, who are unfit and incompetent to do the work they were hired to do. Does 1-100 knew or should have known that they were unfit and incompetent in failing to protect Plaintiff's safety and set into motion the harm caused to Plaintiff.

In claim 3, Plaintiff alleges intentional infliction of emotional distress and mental turmoil. Plaintiff alleges that conduct of Conley, F. Acosta, and John Does 1-25 was intentional and maliciously done for the purpose of causing Plaintiff harm.

As a result of the actions of defendants, Plaintiff suffers headaches, chronic physical fatigue, sharp pains, neurological deficits, nausea, dizziness and Plaintiff believes this will lead to permanent disability. As remedies, Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages.

**C. Discussion**

**Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,

572 F.3d at 969.

Most of Plaintiff's allegations are vague and conclusory statements. As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any named Defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Plaintiff names various officers as Defendants, however, Plaintiff's description of the alleged events is only general and conclusory statements. For instance, Plaintiff alleges Defendant Conley was "slow" to respond to the attack, but does not provide factual support of what happened. Plaintiff's complaint alleges various claims but does not clearly state which claim is alleged against which defendant, and which specific facts support each claim.

**Exhibits**

While "much liberality is allowed in construing pro se complaints, a pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Lam v. Cal. Dep't of Corr. & Rehab*., No. 1:23-CV-01167 BAM PC, 2023 WL 8701254, at *2 (E.D. Cal. Dec. 15, 2023), report and recommendation adopted, No. 1:23-CV-1167 JLT BAM PC, 2024 WL 201269 (E.D. Cal. Jan. 18, 2024) (quoting *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017)). "The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim. In short, [Plaintiff] must state a claim, not merely attach exhibits." *Stewart v. Nevada*, No. 2:09-CV-01063-PMP-GWF, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011).

**Supervisory Liability**

Plaintiff sues Defendant Jeff Macomber, Raul Morales, and possibly others, in their supervisory compacities. To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*,

297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

It is unclear what the policy is that is purportedly at issue. Plaintiff's conclusory statements are insufficient to state a cognizable claim against the supervisory defendants. Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." It is unclear whether there is a policy or not regarding providing security in these circumstances in this case. Plaintiff has failed to plead facts showing that any policy was a moving force behind the alleged constitutional violations. *See Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a

'direct causal link' between that policy and the alleged constitutional deprivation.").

Plaintiff mentions that supervisors should have trained differently or better. A "failure to train" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton v. Harris*, 489 U.S. 378, 387–90 (1989). To establish a failure to train claim, a plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers ... can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390). Plaintiff has not alleged facts demonstrating that any defendant was deliberately indifferent to a need for more or different training.

Plaintiff merely relies on the supervising Defendants' responsibilities to ensure the safety of the prisoners, but this claim is based on respondeat superior which is not cognizable under section 1983. *Iqbal*, 556 U.S. at 677. Such conclusory allegations are insufficient to state the causal link between such defendants and claimed constitutional violation.

In addition, ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees," id., unless the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury," *Canton*, 489 U.S. at 390.

**Eleventh Amendment**

Plaintiff may be attempting to name CDCR as a defendant and also has sued individuals in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety,* 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought

against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court...." *Dittman*, 191 F.3d at 1025–26 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

As CDCR is immune under the Eleventh Amendment, Plaintiff cannot pursue claims for damages against the State in this action.

Plaintiff also may not pursue his claims for monetary damages against the named defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei*, 488 F.3d at 1147 (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991).

**Eighth Amendment - Failure to Protect/Intervene**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

The failure of prison officials to protect inmates from attacks by other inmates or from

dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer*, 511 U.S. at 837. Mere negligent failure to protect an inmate from harm is not actionable under Section 1983. *See Farmer*, 511 U.S. at 835.

As currently pled, Plaintiff fails to allege that any individual defendant knew of specific risk of harm to Plaintiff when Conley opened his cell. For example, Plaintiff does not allege that any defendant knew that Plaintiff where Plaintiff was located or that Bell targeted Plaintiff. Plaintiff's limited factual allegations are not sufficient to state a cognizable failure to protect claim.

The complaint fails to aver that the defendants were aware of facts from which the officer could infer that Plaintiff was under a substantial risk of harm or had time to intervene to stop the particular attack. Plaintiff lumps the defendants together and alleges that they should have known of the generalized fear of attack. Generalized fears of attack at not sufficient to state a claim. "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted). A prison official need not "believe to a moral certainty" that an inmate is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." *Berg v.*

*Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (A "mere suspicion that an attack will occur" is not enough to support a cognizable claim) (citation omitted). Even if a prison official should have been aware of the risk but was not, there is no Eighth Amendment violation, no matter how severe the risk. *Peralta v. Dillard,* 744 F.3d 1076, 1086 (9th Cir. 2014) (citation omitted). Each act by each defendant must be viewed separately and not in combination with other defendants. Plaintiff's broad allegation that he was at risk from the belligerent inmate is too general and speculative to state a claim that any defendant acted with deliberate indifference.

Further, Plaintiff alleges that Conley was "deliberately slow" in responding to the attack. This conclusory allegation fails to state a claim because the Court cannot determine what happened, the timing, the response by correctional officers and other facts which might define what Defendant did or did not do which was "deliberately slow."

Plaintiff also complains about the type of response to the attack since flash grenades and other weapons of violence were not used. Plaintiff is not entitled to any specific type of response, but is entitled to a response that is not deliberately indifferent to the risk of harm. Without more factual support, the Court cannot conclude that Conley's, or anyone else's, response to the attack was deliberately indifferent.

**State Law Claims**

Based on language in his request for relief, Plaintiff appears to be asserting state law claims. Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. Plaintiff has not stated a cognizable claim for relief under federal law.

In addition, to the extent Plaintiff is attempting to bring any claim against defendants

under state law, Plaintiff must allege compliance with the claim presentation requirements of the Government Claims Act. California's Government Claims Act[2] requires that a claim against the State or its employees[3] "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1245 (Cal. 2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal. 4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

**Grievance Process**

Although not entirely clear, Plaintiff may be attempting to base his claims on the denial of his grievances. However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993); *see also Wright v. Shannon*, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment). Denial or refusal to process a prison grievance is not a constitutional violation. *Rushdan v. Gear*, No. 1:16-cv-01017-

---

[2] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741–42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[3] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018). Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening, processing, or denial of his grievances or complaints.

**False Rules Violation Report**

The creation of false evidence, standing alone, is not actionable under § 1983. See *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

**Title 15 and Policy Violations**

To the extent any defendant is alleged to have failed to comply with Title 15 or applicable prison regulations/policies, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See*, *e.g.*, *Nible v. Fink*, 828 F. App'x. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (explaining all section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *4 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW

(PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

**III. Failure to Prosecute and Failure to Obey a Court Order**

**A. Legal Standard**

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B. Discussion**

Here, Plaintiff's amended complaint is overdue, and he has failed to comply with the Court's order. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendants, also weighs in favor of dismissal, since a

presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's August 5, 2026 screening order expressly warned Plaintiff that his failure to file a timely amended complaint would result in a recommendation for dismissal of this action with prejudice. (ECF No. 8.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. As Plaintiff is proceeding *in forma pauperis*, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## IV. Conclusion and Recommendation

For the reasons stated, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed**

**fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 17, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE